[Civ. No. 772. Third Appellate District.—May 5, 1911.]

JAMES E. CONDE and Mrs. JAMES E. CONDE, Respondents, v. WILLIAM SWEENEY, as Sheriff of Tuolumne County, Appellant.

DECISION UPON FORMER APPEAL—LAW OF CASE.—Questions urged upon the present appeal, which were decided against the appellant upon a former appeal, must now be considered as the law of the case.

CONTRACT TO SELL MINES—MACHINERY FASTENED BY ASSIGNEE OF VENDEE—FIXTURES—REMOVAL NOT AGREED — ATTACHMENT — INJUNCTION.—Where the owner of mines contracted to sell the same, and the vendee contracted to sell the same to a third person who erected mining machinery thereon, which was bolted and permanently affixed thereto, without any agreement for its removal, such machinery constituted fixtures to the realty, which neither of the vendees could remove; and upon failure of the first vendee to comply with his contract, such fixtures became the property of the original owner of the mines, who was authorized to enjoin the removal thereof by the sheriff, under an attachment against the second vendee by a creditor thereof.

ID.—RIGHT OF SECOND VENDEE TO FIXTURES LIMITED TO RIGHT OF FIRST VENDEE.—The second vendee had no greater right to the improvements made fixtures to the mines than would have the first vendee, had it made and affixed the same thereto.

ID.—ATTACHMENT AGAINST SECOND VENDEE IN POSSESSION BEFORE END OF FIRST CONTRACT—FIXTURES NOT REMOVABLE.—The attaching

creditor of the second vendee, though his attachment upon the affixed machinery was made while the second vendee was in possession, three days prior to the termination of the right of the original vendee, could have no greater right to remove the fixtures than the original vendee, who could not remove what had become part of the realty. The fixtures cannot be treated as personal property for the purpose of removal under the attachment.

ID.—TERMINATION OF RIGHT OF ATTACHING CREDITOR.—Since the machinery was part of the land, if the levy of the attachment could affect anything, it could reach only the interest of the second vendee in the realty, which was simply the right of possession of the mines and of prospect and development. But since this right ceased three days after the levy of the attachment, there would be no interest upon which the attachment could operate thereafter.

ID.—SUPPORT OF FINDINGS AND JUDGMENT FOR INJUNCTION.—It is held that the complaint, findings and evidence substantially support the judgment for a permanent injunction to prevent the sheriff from removing the machinery, as fixtures of the realty, at suit of the attaching creditor of the second vendee.

ID.—IMMATERIAL FINDING OF POSSESSION DISREGARDED.—Where the evidence and findings establish that the second vendee was in possession when the attachment was levied, a finding that the owner was at all times in possession of the mine may be entirely disregarded.

ID.—IMMATERIAL FINDING OF IRREPARABLE INJURY FROM REMOVAL.—It is held that a finding that the removal of the machinery "will cause these plaintiffs great and irreparable injury" is not material, as they would be entitled to an injunction to restrain defendant from taking away without right a part of the realty, whether in a pecuniary sense they would be greatly damaged or not by the removal.

APPEAL from a judgment of the Superior Court of Tuolumne County, and from an order denying a new trial. G. W. Nicol, Judge.

The facts are stated in the opinion of the court, and in the opinion upon the former appeal, 14 Cal. App. 20.

J. B. Curtin, for Appellants.

Street & Street, and F. P. Otis, for Respondent.

BURNETT, J.—There have been two appeals in this case—the first, from an order "granting plaintiffs an injunction

*pendente lite* as prayed for in the complaint,'' and the present appeal from the judgment awarding a permanent injunction and from the order denying defendant's motion for a new trial.

In the decision on the former appeal (14 Cal. App. 20, [110 Pac. 973]) may be found a full statement of the facts, and it is deemed unnecessary to repeat them here. On said appeal, it may be said, also, two questions discussed herein by appellant were decided adversely to his contention, and as to them the decision must now be considered the law of the case. They involve the action of the court in allowing the supplemental complaint to be filed and the sufficiency of the complaint in its statement of a cause of action. The only vital point to be determined on this appeal relates to the support for the findings furnished by the evidence. It may be stated that the cause was submitted upon the evidence taken at the hearing for a preliminary injunction, but that evidence was not brought up on the former appeal.

Plaintiff James E. Conde testified that the machinery described in the complaint was placed upon the mine after he and his wife had entered into the contract for the sale of said land; that the electric motors were bolted to a concrete foundation which was placed in the earth, except the one in the blacksmith-shop, and that was bolted to a wood foundation; that the lighting transformer was on a pole which was fixed in the ground, and that the electric pump was also bolted down in the mine; that all the machinery was used in working and developing the Dreisam mines. It furthermore appears that the agreements as to the sale of the mine were silent as to the disposition of the machinery that might be placed thereon. There was no agreement nor understanding that any of said machinery might be removed. It necessarily results from the foregoing that the machinery became fixtures and a part of the real property. "A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines or shrubs; or imbedded in it, as in the case of walls; or permanently resting upon it, as in the case of buildings; or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws." (Civ. Code, sec. 660.)

"Sluice-boxes . . . and all other machinery or tools used in working or developing a mine, are to be deemed affixed to the mine." (Civ. Code, sec. 661.)

Being fixtures, of course, they are included in the ownership of the real property.

"When a person affixes his property to the land of another, without an agreement permitting him to remove it, the thing affixed, except as provided in section ten hundred and nineteen, belongs to the owner of the land, unless he chooses to require the former to remove it." (Civ. Code, sec. 1013.) The exception provided by section 1019 has no application here. It relates to certain fixtures, which have not become "an integral part of the premises," that a tenant may remove. In the case at bar there was no relation of landlord and tenant at any time.

As to these propositions, the situation before us is covered by the decision of the supreme court in *Pomeroy* v. *Bell*, 118 Cal. 635, [50 Pac. 683]. Therein it is said: "The court finds that all of the property placed upon the land by the defendant Bell was permanently attached and affixed to the land, and that it was so affixed by him without any agreement with the plaintiffs, or either of them, permitting him to remove any portion of the same. The property thus became a part of the land (Civ. Code, secs. 658–661), and under the provisions of section 1013 of the Civil Code belonged to the plaintiff."

It is not controverted here that at the time of the trial the land was the property of plaintiffs, as the defendant had utterly failed to comply with the terms of the executory contract for its purchase. The fixtures, also, therefore belonged to plaintiffs.

It is manifestly beside the question that the fixtures were placed upon the land by the Parlin Mining Company instead of by the Parlin Gold Mining Company. With the latter the plaintiffs entered into the contract for the sale of the land, and the said company executed a similar contract with the Parlin Mining Company for the purchase of the property without any agreement as to the fixtures, and under that contract the Parlin Mining Company entered into possession and placed said machinery. The latter company would, of course,

have no greater right to the fixtures than would the original vendee had it made the improvements.

As the machinery belonged to plaintiffs, no one would contend that at the time of the trial, November 2, 1909, it could be taken under an attachment issued against the Parlin Mining Company, but it is claimed that the situation was different when the writ of attachment was actually levied, on the twenty-ninth day of August, 1909, as the contract for the purchase of said mine did not expire till three days later.

It is clear, however, that the attaching creditor could have no greater right than the Parlin Mining Company. The latter could not remove the machinery as it had become a part of the realty, and the title of the company to the realty was simply a conditional, defeasible one that was actually defeated and terminated by the default in the payment of the purchase price. This very question was decided in the Pomeroy case, *supra*, wherein it was held that the entry of the vendee "is by reason of the estate in the land which he claims in himself, and the improvements which he makes thereon are made in contemplation of his becoming the owner, and if permanently affixed to the land, become a part of the realty as fully as if he were the absolute owner. Such improvements belong to the vendor in case the vendee subsequently declines to comply with his contract of purchase, and the vendee has no right to remove them from the land." In that case the vendee attempted to remove them prior to the expiration of the time within which the purchase was to be completed, and here the attaching creditor of the vendee was attempting a similar removal.

Viewing the matter in a little different light, it is plain, since the machinery was a part of the land, that the levy of the attachment, if it could affect anything, would reach only the interest of the Parlin Mining Company in the realty, and that was simply the right of possession of the mines and to prospect and develop them. (*Conde* v. *Sweeny,* 14 Cal. App. 20, [110 Pac. 973]; *Pomeroy* v. *Bell, supra.*) But since this right ceased on the first day of September, there would be no interest upon which the attachment could operate thereafter.

But the whole case of appellant rests upon the assumption that the machinery was personal property and belonged to

16 Cal. App.—11

the Parlin Mining Company at the time the levy was made. This, as already shown, is entirely untenable, and the injunction was properly issued to restrain the sheriff from removing any part of the real property the title to which was vested absolutely in plaintiffs. In fine, the situation is as follows: A, owning a mine, enters into a contract with B for its purchase on certain terms, B thereafter executes a contract to sell it to C for a certain amount, and C enters into possession and places thereon certain fixtures which become a part of the realty. While B and C, respectively, have the right to the use and enjoyment of the property while the said executory contracts are in force, neither, nor his creditor, has the right at any time to take away any part of said realty, and much less would he have such right after all claim under the contract with A had terminated by reason of the failure to pay the purchase price of the property.

Some contention is made that the complaint, findings and evidence are conflicting in material parts, but it will be found that the considerations are not of vital importance. It was sufficient for the court to find that James E. Conde was and is the owner of the property, describing it, that plaintiffs entered into the agreement in writing with the Parlin Gold Mining Company, setting out the agreement; that said company entered into the exhibited agreement with the Parlin Mining Company; that after entering into said agreement, said Parlin Mining Company placed upon the property the machinery in question and that said machinery was bolted and fastened so as to become fixtures and all of it was actually used in working and developing said Dreisam mines; "that on the twenty-ninth day of August, 1909, the defendant, as sheriff of the said county of Tuolumne, under and by virtue of a writ of attachment issued out of the superior court of said county in an action wherein Charles H. Clayter is plaintiff and the Parlin Mining Company, a corporation, in defendant, did levy upon" said machinery and commenced to remove it and threatens to continue to remove all of it from said mines; that neither the Parlin Gold Mining Company nor the Parlin Mining Company paid to plaintiffs or either of them the purchase price agreed to be paid for the mines on the first day of September, 1909, or at any time or at all, and that neither of them has since the first day of September,

1909, had any right, title or interest whatever in and to said Dreisam mines. In view of the principles already discussed, the foregoing findings, which are supported by the evidence, justify the conclusions of law in favor of respondents.

There is also a finding that plaintiff, James E. Conde, was at all time in possession of said mine. But this may be entirely disregarded. The fact is that the Parlin Mining Company was actually in possession from July 15, 1908, to and including September 1, 1909, but the possession did not and could not, confer upon it or its creditor the right to take away any part of the realty.

Again, the court found that the removal of the machinery "will cause these plaintiffs great and irreparable injury." They certainly would be entitled to an injunction to restrain the defendant from taking away without right a part of their realty, whether in a pecuniary sense they would be greatly damaged or not by the removal. If the property had merely a nominal value, the owner surely could legally oppose its conversion to satisfy another person's debt. But, if material, the truth is, that the machinery here was of value, and its removal would reduce the value of the mine and there was evidence to that effect.

Appellant suggests that the mines would be as valuable without the machinery as they were at the time of the execution of the contract of sale to the vendee. This, however, is a false quantity, as we are not dealing with a case involving simply the commission of waste or the impairment of security. In *Miller* v. *Waddingham,* 91 Cal. 377, [27 Pac. 750, 13 L. R. A.. 680], it is indeed held that "It is a well-recognized principle in equity that a mortgagee cannot maintain an action to restrain waste without showing that thereby his security will be impaired. And by parity of reasoning the vendor who holds the legal title as security for the fulfillment of the contract of purchase by the vendee in possession should show that he will sustain some injury before he can maintain an action like the present. So long as the sufficiency of the security is unimpaired he has no right to disturb the vendee in any use or enjoyment which he may make of the land." But it is plain that the case has no application, for the reason that there the contract of sale was still in force, the vendee was still rightfully in possession, the improvements were not

found to be fixtures and therefore a part of the realty, but to the contrary, it was assumed in favor of the judgment that the court below determined that the buildings were not fixtures, and furthermore, it was assumed that the vendee "is not only able to comply with his obligations, but that he will fully and promptly meet them as they mature."

The foregoing seems to cover all the points made that we deem worthy of specific notice. We think there can be no question that the conclusion of the lower court is right. The judgment and order are therefore affirmed.

Chipman, P. J., and Hart, J., concurred.