[Civ. No. 4025. Third Appellate District.—March 21, 1930.]

HENRY SCHAEFER, Appellant, v. UNITED BANK AND TRUST COMPANY OF CALIFORNIA (a Corporation) et al., Respondents.

Arthur C. Huston and Busick & Leeper for Appellant.

Butler, Van Dyke & Desmond for Respondents.

JAMISON, J., *pro tem.*—This case was tried by the court without a jury, the court denying appellant's request for a jury. Judgment was rendered in favor of respondents and from the judgment appellant has appealed.

In substance the facts are as follows: In the spring of 1927, two corporations, the United Bank and Trust Company of California and the French-American Bank were merged under the name of United Bank and Trust Company. At the time of this merger it was agreed by the stockholders of the two corporations first named that upon the surrender to the United Bank and Trust Company of the stock of the United Bank and Trust Company of California the stockholders so surrendering their stock should receive from the new corporation 1.6 shares of its stock for each share of stock so surrendered with the additional right to purchase for $87.50 one share of the stock of the new corporation for each four shares of stock so surrendered, the right to make this purchase expiring on October 10, 1927. Appellant owned two blocks of the stock of the United Bank and Trust Company of California, one block being for 67½ shares and the other being for 202½ shares, the latter

block not being involved in this litigation. On August 29, 1927, appellant deposited with the Sacramento branch of the United Bank and Trust Company certificate number 1677 for said block of 67½ shares of said stock for the purpose of having reissued to him shares of stock of said last-named corporation to which he was entitled, upon the surrender of this certificate as aforesaid, and thereupon the said bank delivered to appellant its receipt for said certificate and this certificate was forwarded to its San Francisco branch.

At this time respondent Peck was the vice-president of the Sacramento branch of said United Bank and Trust Company and he testified that on August 30, 1927, he telephoned appellant that he had received an offer of $170 a share from Brandenburg and Company, a San Francisco brokerage firm, for said 67½ shares of stock; that on August 31, 1927, appellant called on Peck at the bank and asked him what the market price of said stock was on that day. Peck replied that he did not know, but at appellant's request he called up Brandenburg and Company over the long-distance telephone and was informed by a Mr. Upton, a member of said firm, that $170 per share was the best the market afforded. Peck repeated this information to appellant and appellant then said, "Tell him he can have it for $175 per share," and in response to this Upton said, "All right it is sold," and Peck thereupon informed appellant of the acceptance of his offer. The following day Peck received a letter from Brandenburg and Company confirming the sale, and directing that the delivery of the stock be made through the Pacific National Bank of San Francisco, the purchase price of said stock to be paid upon the receipt by that bank of the receipt delivered to appellant by the United Bank and Trust Company, when he deposited with it his said stock.

On September 8th appellant brought the said receipt to Peck at the bank and delivered the same to him, signing an indorsement thereon to the effect that he thereby sold, assigned and set over unto the Pacific National Bank of San Francisco all his right, title and interest in the certificate for the 67½ shares of stock and authorized the new stock to be issued per its order. This receipt so indorsed was attached to a draft for $11,812.50 and forwarded by the said

Sacramento branch of the United Bank and Trust Company to the Pacific National Bank with instructions to deliver it to Brandenburg and Company upon receipt of said sum of $11,812.50.

The Pacific National Bank upon receiving the said receipt, draft and instructions notified Brandenburg and Company that it held this collection. Mr. Upton of Brandenburg and Company called on said bank and informed it that he desired the certificate for the 67½ shares before paying the draft. He and Mr. Kellman, who represented this bank, then called on the United Bank and Trust Company at San Francisco and requested of Mr. Everard, who was in charge of the stock transfers of this bank, the delivery of the said certificate. This Everard refused to do, without further order from Peck. He thereupon called Peck on the telephone and requested authority for so doing. Peck assured him that appellant would give the authority and Everard then delivered the said certificate of stock to Kellman, who, in turn, upon payment of the said sum of $11,-812.50, delivered the said certificate to Upton. On this same date Peck mailed to the Pacific National Bank written authorization from appellant to the United Bank and Trust Company, at San Francisco, to deliver said certificate to the Pacific National Bank. This last mentioned bank remitted the said sum of $11,812.50, received by it upon the surrender of said certificate, as aforesaid, to the United Bank and Trust Company at Sacramento and said last-named bank deposited it to the credit of appellant and so informed him.

Appellant contends that the trial court erred in refusing him the right to have the case tried by a jury.

Summarized, the complaint alleges that appellant was the owner of a certificate of stock covering 67½ shares, that the corporation which had issued the stock had been merged with another corporation and a new corporation formed, that by reason of this merger, upon surrendering this certificate to the new corporation, he became, by agreement of the stockholders of said corporation, entitled to have stock of the new corporation issued to him in the ratio of 1.6 of the stock of the new corporation for each share of the old corporation so surrendered and, in addition, was given the privilege of buying at $87.50 per share, one share

of the new corporation for each four shares of the old corporation surrendered; that he surrendered his said certificate for 67½ shares in the old corporation to the new corporation for the purpose of having the new corporation issue its said stock to him and to enable him to purchase shares of the new corporation, as aforesaid, but that respondents Peck and Yates, who were the vice-presidents of the new corporation, conspired with two unknown persons to confiscate appellant's said certificate and by means of said conspiracy caused the new corporation to deliver the said certificate to them; that appellant has demanded of respondents the return to him of said certificate but that they have refused to do so, and that he has demanded of both the old and the new corporation that they issue and deliver to him 108 shares of the stock of the new corporation, with the right to purchase 27 additional shares of said stock at $87.50 per share, which they have also refused to do; that since the surrender of said certificate, the value of the stock in both of said corporations has greatly increased, so that a money judgment would not adequately compensate appellant for the injuries and damages he has received and that it is necessary to fully compensate him that he have specific performance of said agreement. He asks judgment that he be declared to be the owner of said certificate of stock for the 67½ shares and that none of respondents have any right, title or interest therein, that he is entitled to have 108 shares of the stock of the new corporation issued to him and have the right to purchase an additional 27 shares at $87.50 per share, and that the court direct each of said respondents to issue to appellant said stock in said new corporation and permit him to purchase 27 additional shares of stock at $87.50 per share in lieu of the old stock.

Respondent Pacific National Bank answered denying, on information and belief, all the allegations of the complaint, except that the United Bank and Trust Company was a corporation and disclaimed any interest in the subject matter of the action. The other respondents answered, in substance, that appellant had sold and assigned the certificate of stock involved in this action to Brandenburg and Company, and that prior to the commencement of this action and subsequent to the sale of same, the United Bank and Trust Company had issued to the purchaser a new certificate

therefor, and also denied the alleged conspiracy and fraud alleged in the complaint.

Section 592 of the Code of Civil Procedure provides that actions for the recovery of specific real or personal property, with or without damages, or for money claimed as due upon contract, or as damages for breach of contract, or for injuries must be tried by a jury. In other cases issues of fact must be tried by the court.

This is not an action for the recovery of specific personal property, nor is it an action for damages, growing out of any breach of contract, or for injuries sustained by appellant. It appears from an examination of the complaint and of the relief therein sought, that it is an action for specific performance.

■ Actions to enforce specific performance were not recognized at common law. (23 Cal. Jur. 413.) Such actions are wholly of equitable cognizance. (*Glock* v. *Howard & Wilson Colony Co.*, 123 Cal. 1 [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713]; *Rockhill* v. *Parker*, 22 Cal. App. 367 [134 Pac. 720].) Pomeroy in his work on Equity Jurisprudence, volume 4, section 1412, says: "Cases frequently arise where corporations refuse to recognize the rights of assignees of stock, and make the transfers on their books, and issue new certificates in place of the old ones presented, or where certificates have been presented to the company without the owner's consent and negligence, and new certificates have been issued instead thereof to others purporting to be entitled thereto. In such cases it is well settled that although the law may give some remedy, as that of damages, for the refusal, equity has jurisdiction to compel the corporation to make the transfer and issue new certificates in the one case, to the lawful assignee, and in the other, to decree that the corporation replace the stock upon its books and issue new certificates to the original owner, or if it is unable to do this by reason of its not having or being able to procure any shares, to pay the value of the stock."

■ Appellant maintains that the answer of respondents, other than that of Pacific National Bank, raised a question of law which should have been tried by a jury, that is to say, the question as to whether or not there had been a sale of said stock by appellant to Brandenburg and Company.

The main purpose of this action was to compel the specific performance of the agreement of the stockholders of the United Bank and Trust Company of California and the French-American Bank, made upon their merger, authorizing the new corporation formed by such merger, to wit, the United Bank and Trust Company, upon delivery to it of stock of the United Bank and Trust Company of California to issue to the holders thereof certain stock of said new corporation and grant them the right to purchase additional stock, as hereinbefore set forth. This clearly brought the action within the equitable jurisdiction of the court.

It is well settled in this state that it is not error to deny a jury in any case where such right is not granted at common law. (*Pomeroy* v. *Collins*, 198 Cal. 46 [243 Pac. 657].) Where the case, as made by the pleadings, involves the application of the doctrines of equity and the granting of relief which can be obtained in a court of equity, and not elsewhere, the parties are not entitled to a jury trial. (*Fish* v. *Benson*, 71 Cal. 428 [12 Pac. 454]; *Ballou* v. *Avery*, 175 Cal. 642 [166 Pac. 1003].) There is no right to a trial by jury where the legal issues are merely incidental to the relief sought. (15 Cal. Jur. 337.) The case of *Reiner* v. *Schroeder*, 146 Cal. 411 [80 Pac. 517], relied upon by appellant, is not in point. In that case, the only essential controversy was whether or not defendant had wrongfully ousted plaintiff from possession of certain mining property and therefore the action was one for the recovery of specific real property. (*Holland* v. *Kelly*, 177 Cal. 43 [169 Pac. 1000].)

Where the court, as a court of equity, has jurisdiction of the main action, a general jury trial of all the issues cannot be demanded. (*Mesenburg* v. *Dunn*, 125 Cal. 222 [57 Pac. 887].)

We are of the opinion that the court did not err in denying the appellant a trial by jury.

Appellant says that the main point for decision in this case is whether or not appellant sold the stock in controversy. The trial court found that on or about September 1, 1927, appellant sold to Brandenburg and Company the shares of stock in controversy and that, pursuant to instructions from Brandenburg and Company to close the sale of said stock through the Pacific National Bank, appel-

lant executed a written assignment and transfer of said stock to said Pacific National Bank, and as part of the transaction of September 12, 1927, the appellant, in writing, authorized and directed the United Bank and Trust Company, having possession of said certificate of stock, to deliver the same to the Pacific National Bank, and that pursuant thereto, the United Bank and Trust Company did deliver it to the Pacific National Bank, for the use and benefit of Brandenburg and Company, the purchaser of said stock, and did collect and receive for the benefit of plaintiff the purchase price thereof, to wit, $11,812.50, which sum the United Bank and Trust Company, prior to the commencement of this action, offered to pay to appellant and renewed such offer in open court at the trial of this case.

Appellant contends that the evidence does not support the finding that there was a sale of the stock. Peck testified that on August 30, 1927, he had a conversation with appellant over the telephone in which he informed appellant that he had received an offer from Brandenburg and Company, offering $170 a share for appellant's small block of stock, the one for 67½ shares, and to think the offer over, and decide what he would do and to let him know the next day. The next day appellant called on Peck. He asked Peck how the market was. Peck told him he did not know. Appellant then asked Peck to call up and find out. Peck then called up Brandenburg and Company over the long-distance telephone and talked with Upton, a member of that company. Upton told Peck that the top price for the stock was $170 per share, which information Peck communicated to appellant. Appellant then said to Peck, "You tell him he can have it for $175.00 a share." Peck then said to Upton, "You can have the stock for $175.00 a share," and thereupon Upton said, "All right, it is a sale. We will take the stock." Peck then said to appellant, "Your stock is sold, they will accept your offer." At that time Peck told appellant that he was talking to Brandenburg and Company. Peck then told appellant to bring in his receipt for the stock and he would forward it and use it to collect his money for him. Appellant brought the receipt to Peck at the bank on September 8, 1927. During the interval between August 31st and September 8th Peck called appellant on the telephone two or

three times and requested him to bring in the receipt as Brandenburg and Company were anxious to get the stock to close up their business transactions.

On September 8th appellant brought his receipt to Peck. Becker, an employee of the Sacramento branch of the United Bank and Trust Company, testified that when appellant brought the said receipt to the bank on September 8th, he and Peck had some conversation, then appellant and Peck came to his desk and Peck dictated the assignment that was placed on the back of the receipt. Appellant signed this and Becker then drew a draft on Brandenburg and Company for the purchase price of the stock and told appellant to sign it. Becker was then called to another part of the bank and left the receipt and draft on his desk and did not return for an hour. When he returned to his desk appellant was gone. He did not notice whether or not appellant's name appeared on the draft. He took the receipt and draft to another employee of the bank named Sullivan and directed him to send the receipt and draft to the Pacific National Bank through the mail and this Sullivan did. Sullivan testified that appellant's name was signed to the draft when it was delivered to him. With the draft and receipt Sullivan inclosed a collection letter with instruction to deliver document only on payment of the draft. The court found that said draft had not been signed by appellant. Peck testified that he never at any time told appellant that the Pacific National Bank had purchased the stock and he further testified that the reason why the indorsement on the receipt was in favor of that bank was because Brandenburg and Company had, in their letter of August 31st confirming the sale of the stock, requested that the matter be closed through this bank.

On September 20, 1927, appellant wrote a letter to the United Bank and Trust Company at San Francisco, in which he said: "On September 8, 1927, I endorsed this receipt to the Pacific National Bank of San Francisco and left with the United Bank and Trust Company of Sacramento with instructions to deliver same upon receipt for me of the sum of $175.00 for each of the 67½ shares. It is my understanding of the transaction that you were to act as my agent in the selling of the stock and that no actual sale took place. I did not intend to make any sale of the stock

to you. You were not to make delivery until you received the money. However, if any sale did take place, I hereby rescind same on the ground of your failure to pay me for the stock and there was no consideration at all for my endorsing the receipt for the stock to you. I hereby revoke your agency to sell said stock and demand that you return the receipt for the stock to me.''

While there is a conflict in the evidence, nevertheless there was substantial evidence that appellant knew that Brandenburg and Company had made the offer to purchase his said stock, that they accepted his offer to sell the same and that between the thirty-first day of August and the eighth of September they were insisting that the sale be completed by the surrender of the receipt.

There is no evidence that the Pacific National Bank made any offer for or negotiated for the stock, or desired at any time to purchase the same. On the contrary, it appears that the only connection this bank had with the transaction was to receive the receipt from the United Bank and Trust Company and deliver it upon payment of the purchase price. That this was the extent of the interest which the Pacific National Bank had in this matter is strengthened by the statement in appellant's letter of September 21st, in which he stated that he indorsed the receipt to this bank with instructions to deliver the same upon receipt for him of the $175 for each of the 67½ shares.

We are of the opinion that there was substantial evidence supporting the finding of the court that there was a sale of the stock and that the firm of Brandenburg and Company was the purchaser.

Appellant, having made a sale of his stock and the purchase price having been paid to his agent, it appears to the court that the fact that he did not sign the aforesaid draft drawn upon Brandenburg and Company did not in anywise affect the validity of said sale.

Appellant claims that the agreement entered into between appellant and Brandenburg and Company on August 31, 1927, not being in writing, was invalid under the provisions of subdivision 4 of section 1973 of the Code of Civil Procedure, which requires an agreement for the sale of goods and chattels and things in action, at a price of not less than $200, to be in writing, unless the buyer receives

part of the goods or things or pays at the time some part of the purchase money. In this case, however, the buyer did receive the property sold, and did pay the purchase price. The delivery to and acceptance by the purchaser of goods under a parol contract of purchase and sale, which was within the statute of frauds when made, relates back to and operates upon the contract so as to validate it as of the date it was originally entered into. (*Coulter Dry Goods Co.* v. *Wentworth*, 171 Cal. 500 [153 Pac. 939].) ▇ Then again this parol sale of August 31, 1927, was fully executed by appellant and Brandenburg and Company. The statute of frauds has no application to an executed oral agreement. (*Central Bank of Oakland* v. *Lake*, 201 Cal. 438 [257 Pac. 521] ; *James* v. *Hall*, 88 Cal. App. 528 [264 Pac. 516]. See, also, 12 Cal. Jur. 926.)

▇ In the matter of costs, we are of the opinion that, in awarding costs against appellant, the trial court was within its rights.

The judgment in this case as to this matter of costs did not come under the provisions of section 1022 of the Code of Civil Procedure, but rather under the provisions of section 1025 of said code.

We cannot say that the court abused its discretion in awarding costs against appellant.

The judgment is affirmed.

Thompson (R. L.), J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 19, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 19, 1930.