[No. A017480. Sixth Dist. Aug. 28, 1985.]

DOYLE E. HASTINGS et al.,
Plaintiffs, Cross-defendants and Respondents, v.
DONALD LEWIS MATLOCK et al.,
Defendants, Cross-complainants and Appellants.

## Counsel

Harold Clinton Brown, Michael J. Brady, Mark G. Bonino and Ropers, Majeski, Kohn, Bentley, Wagner & Kane for Defendants, Cross-complainants and Appellants.

Gary L. Olimpia, Susan C. Chesebro, Gayle A. Zickgraff and Kelly, Leal & Olimpia for Plaintiff, Cross-defendants and Respondents.

## Opinion

**BRAUER, J.**—Betty and Donald Matlock appeal from a judgment awarding respondents Carolyn and Doyle Hastings specific performance of an oral out-of-court settlement agreement. The Matlocks make six claims of error, which in essence run thus:

(1) The trial court erred in denying the Matlocks a jury trial on the issues of (a) whether the alleged settlement agreement existed at all, and (b) the precise terms thereof;

(2) The alleged agreement was unenforceable because it fell within the purview of the statute of frauds;

(3) The alleged agreement was unenforceable because it was fatally uncertain as to the terms of time and manner of payment;

(4) No competent evidence was adduced to show that the Hastings were willing and able to perform their part of the alleged agreement;

(5) Enforcement of the agreement will cause extreme hardship to the Matlocks; and

(6) The trial court erred in awarding the Hastings their attorney's fees.

We find these contentions to be without merit, and therefore affirm the judgment.

## I. History

### A. *Events Before Trial*

On September 24, 1976, the parties entered into a written agreement whereby the Matlocks agreed to buy, and the Hastings agreed to sell, (a) a two-and-one-half acre parcel of land, and (b) a four-bedroom house to be constructed on the parcel by Mr. Hastings, a licensed contractor. The total purchase price was to be $206,800. The contract provided in part: "If any party to this agreement, including broker, shall institute any legal action against any other party to this agreement, the prevailing party shall be entitled to court costs and reasonable attorney's fees in addition to any other judgment of the court."

An escrow was opened, and a deed to the parcel was placed therein. While the house was under construction, the Matlocks paid the Hastings $50,000. The Matlocks also paid, outside the terms of the contract, the sum of $92,842.86 for improvements to the parcel, including landscaping and the installation of a swimming pool. On May 31, 1977, when the house was substantially complete, the Matlocks took possession pursuant to a written rental agreement, by the terms of which they agreed to pay rent to the Hastings at the rate of $38.50 per day,[1] from June 1 to July 5, 1977. That agreement contained the following provision: "In the event services of attorneys are required by Seller to enforce the terms hereof or recover possession of the premises, Purchasers agree to pay the reasonable cost thereof."

Once in possession, the Matlocks claimed to have discovered structural and cosmetic defects in the house, as well as violations of the Uniform Building Code. They refused to pay the rent, but they remained in possession of the house. The escrow never closed. In September of 1977 the Hastings commenced action No. 385045, seeking damages for breach of the purchase-sale contract, and restitution based on rescission of that contract. The Matlocks filed a cross-complaint seeking to recover the costs of correcting the defects in the house, and the value of the improvements they had made. In April of 1978 the Hastings filed action No. 397816, a complaint for unlawful detainer.

On May 26, 1978, while the Hastings were present, the Matlocks were deposed in the offices of Phillip Steinbock, counsel for the Hastings. During

---

[1]This figure initially was based upon the prime interest rate in effect in May of 1978. The Hastings' payments on the construction loan for the house floated with the prime interest rate.

a recess in Mr. Matlock's deposition, settlement negotiations were initiated. The Hastings and the Matlocks were seated in different offices, and their respective counsel (Phillip Steinbock for the Hastings, Francis Crawford for the Matlocks) travelled between the two offices bearing proposals and counter-proposals. The evidence was in conflict as to (1) whether a full settlement was reached at all, and (2) the precise terms of the settlement, if any. Viewing the evidence in the light most favorable to the prevailing party (*Jessup Farms* v. *Baldwin* (1983) 33 Cal.3d 639, 660 [190 Cal.Rptr. 355, 660 P.2d 813]; accord, *Estate of Leslie* (1984) 37 Cal.3d 186, 201 [207 Cal.Rptr. 561, 689 P.2d 133]), it appears that the following events occurred:

The Matlocks, through their attorney Crawford, proposed that if the Hastings paid them $142,842.86 (representing the cost of the improvements made, $92,842.86, plus the $50,000 previously received by the Hastings from the Matlocks), they (the Matlocks) would vacate the premises. The Hastings, through their attorney Steinbock, accepted that proposal. Then Mrs. Matlock said that she would need time to move; in her words, "I have three children, I can't just pick up and move in a week from a 4600 square foot home." A discussion ensued, with all parties and their respective counsel present. It was agreed that (1) the Matlocks would have 45 days to relocate, during which period they could live in the house rent free; (2) that if the Matlocks needed an additional 45 days to relocate, they would pay reasonable rent to the Hastings during that period; and (3) in any event, the Matlocks would vacate the premises no later than 90 days from May 26, 1978 (the date of the deposition). It further was agreed that the Hastings would have 45 days to pay the $142,842.86 to the Matlocks. At that point Mr. Crawford (counsel for the Matlocks) was prepared to leave the building. Then Mr. Steinbock (counsel for the Hastings) suggested that the settlement terms be memorialized in writing; and he asked his partner, Mr. David Hoffman, to draft an agreement containing the terms that had been discussed.

While the draft was being dictated and typed, Mrs. Matlock left the offices and went to sit in her car.[2] The dictation and typing took close to two hours.

---

[2]The evidence was in conflict as to precisely why Mrs. Matlock left the offices. In its memorandum of intended decision, the trial court concluded: "At a point in time Mrs. Matlock became emotionally upset. The exact reasons for her emotional problem is [*sic*] not clear. There was a discussion about the Hastings' purchasing of the Matlocks' garbage compactor. Mrs. Matlock alluded to her purchase of a $500 bedspread which matched the color of the master bedroom. There was inferentially a suggestion that the Hastings purchase said bedspread because the Matlocks would have no use for the same. In any event, Mrs. Matlock left Mr. Steinbock's offices and sat in her automobile. Admittedly, this was her 'dream house' and the ancillary discussions quite understandably caused an emotional reaction."

During that period an atmosphere of cordiality prevailed, and drinks were served. When the draft was completed, copies were given to the Hastings, to Mr. Matlock, and to Mr. Crawford. Mr. Matlock, in reading his copy, remarked that he could not guarantee the performance of two ice-makers in the house. An addendum to the draft, concerning the ice-makers, was prepared. Meanwhile Mr. Matlock went outside and brought his wife back into the offices.

On reading a copy of the draft, Mrs. Matlock said, "What is this? This is totally unacceptable. How can I trust this man to give me a check in forty-five or ninety days? . . . What happens if I go out and make a contract on another home, purchase another home, and then he doesn't come up with the money?" The Matlocks and Mr. Crawford retired to another office to discuss the matter. Mr. Crawford returned, and said that while Mr. Matlock was willing to sign the agreement as drafted, Mrs. Matlock was not. Mr. Crawford was very apologetic, and suggested reverting to the terms of an earlier settlement proposal. Mr. Steinbock responded that the case already had been settled. The Matlocks and Mr. Crawford then left the offices.

B. *The Motion and the Appeal*

On July 3, 1978, while the aforementioned actions were pending, the Hastings moved for enforcement of the oral settlement agreement. Subsequently an evidentiary hearing was held and the motion was granted. Thereafter the Matlocks' request for written findings and conclusions was denied. The Matlocks appealed from the judgment entered on the order granting the motion. The Court of Appeal reversed the judgment and remanded the cases, holding that the trial court had erred in enforcing an oral out-of-court settlement by means of a nonstatutory "speaking motion." (*Hastings* v. *Matlock* (1980) 107 Cal.App.3d 876, 880-883 [166 Cal.Rptr. 229].) In its opinion the Court of Appeal noted, among other things, that the issue of the alleged settlement had not been properly pleaded. (*Id.*, at pp. 881-883.)

C. *The Trial and the Judgment*

After the remittitur had issued from the Court of Appeal, the pleadings were amended[3] and the parties stipulated to a bifurcated trial to determine the issue of the alleged oral settlement agreement. The parties further stip-

---

[3]On September 24, 1981, in action No. 385045, an order was filed, based upon a stipulation between counsel for both sides, to the effect that the complaint, the cross-complaint, and the answer to the cross-complaint could be amended. Subsequently the Hastings' complaint was amended to add a second cause of action seeking specific performance of the oral settlement agreement.

ulated that the matter could be heard before David S. Lull, temporary judge. The case came on for trial on October 8, 1981.

At the outset the court ruled that the Matlocks were not entitled to a jury trial, and tentatively ruled that the alleged settlement agreement did not fall within the purview of the statute of frauds. The matter then proceeded as a court trial, at which the Hastings, the Matlocks, Mr. Steinbock, Mr. Crawford, and Mr. Hoffman all testified. Once the trial had been concluded, the court prepared a memorandum of intended decision and thereafter entered a judgment. We quote from a portion of the judgment:

"IT IS HEREBY ORDERED that plaintiffs, DOYLE E. HASTINGS and CAROLYN D. HASTINGS, are awarded judgment of specific performance against the defendants, DONALD LEWIS MATLOCK and BETTY RAE MATLOCK, as follows:

"1. The court finds that the parties did indeed arrive at a settlement of the controversy which was sufficiently definite in its terms and provisions to justify equitable enforcement.

"2. The agreement was essentially simple and reasonable in the light of the circumstances then existing. The parties arrived at a fair and expeditious solution of rescission.

"3. The court finds that the essentials of the oral agreement were as follows:

"a. That the Hastings pay the Matlocks the sum of $142,842.86.

"b. That the Matlocks vacate the premises.

"c. That the written agreement pertaining to the purchase of the home be rescinded.

"d. That the Matlocks have possession of the premises for a period of 45 days rent free; thereafter up to 90 days they pay rent in the form of interest in the sum of $2,000.00 per month.

"e. That the Hastings be permitted a period of 45 days to tender payment.

"4. The plaintiffs, DOYLE E. HASTINGS and CAROLYN D. HASTINGS, are awarded their costs of suit, including attorney's fees, incurred herein."

Following a denial of their motion for new trial, the Matlocks appealed from the judgment.

## II. Discussion

### A. *Jury Trial*

 " ' "The right to trial by jury guaranteed by the [California] Constitution is the right as it existed at common law at the time the Constitution was adopted. . . . The common law . . . as it existed in 1850 is the rule of decision in this state . . . ." ' " (*People* v. *One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283, 286-287 [231 P.2d 832]; *Tibbits* v. *Fife* (1958) 162 Cal.App.2d 568, 571 [328 P.2d 212].) Appellants Matlock correctly point out that "[i]n determining whether the action was one triable by a jury at common law, the court is not bound by the form of the action but rather by the nature of the rights involved and the facts of the particular case—the gist of the action." (*People* v. *One 1941 Chevrolet Coupe, supra,* 37 Cal.2d at p. 299.) They go on to argue that the gist of the present action is one "at law," and that therefore they were entitled to have a jury determine the issues of (1) whether the parties intended to enter into an oral settlement agreement; (2) whether there was mutual assent; (3) whether the terms were agreed upon; and (4) whether the allowance to the Hastings of 45 days within which to tender payment amounted in effect to a breach of the agreement. We disagree.

By stipulation the action below was a bifurcated one; the purpose of the trial was to determine whether there should be specific performance of an oral out-of-court settlement agreement. Damages were not in issue. "Actions to enforce specific performance were not recognized at common law." (*Schaefer* v. *United Bank & Trust Co.* (1930) 104 Cal.App. 635, 641 [286 P. 723].) " 'The constitutional guaranty of the right to a jury trial does not apply to actions involving the application of equitable doctrines and the granting of relief that is obtainable only in courts of equity. Accordingly, a jury cannot be demanded as of right in such actions.' " (*Tibbits* v. *Fife, supra,* 162 Cal.App.2d at p. 572; *Schaefer* v. *United Bank & Trust Co., supra,* 104 Cal.App. at p. 642.) The fact that in an action for specific performance of an agreement the court must determine the existence of the agreement does not in itself transform the action into one at law. (*Hartman* v. *Burford* (1966) 242 Cal.App.2d 268, 271 [51 Cal.Rptr. 309].)

Furthermore, though specific performance was their immediate end, the Hastings also sought thereby to enforce a rescission of the written purchase-sale contract and rental agreement. Where no damages are sought, and a plaintiff seeks only to rescind, the action is equitable and a jury trial is not a matter of right. (*Bank of America* v. *Greenbach* (1950) 98 Cal.App.2d 220, 228-229 [219 P.2d 814]; and see *Fowler* v. *Ross* (1983) 142

Cal.App.3d 472, 477-478 [191 Cal.Rptr. 183] [action for declaratory relief, seeking rescission; held, no right to jury trial].)

We conclude that the gist of the action below was equitable in nature, and that the court commited no error in denying the Matlocks a jury trial.

## B. *Statute of Frauds*

The Matlocks next contend that the settlement agreement cannot be enforced because it falls within the purview of the statute of frauds. Specifically, they argue that the agreement was required to be in writing because, by its alleged terms, it contemplated two transfers of interests in real property, *viz.*, (1) a transfer of "title" to the improvements from the Matlocks to the Hastings, and (2) a surrender of the Matlocks' "equitable title" as purchasers of the real property. They cite Civil Code sections 658 and 660, and *McClellan* v. *Lewis* (1917) 35 Cal.App.64, 68 [169 P. 436]. We are not persuaded.

■ Where a vendee under a contract of sale installs fixtures on the vendor's land, those fixtures become the property of the vendor by virtue of the provisions of Civil Code section 1013.[4] (*Pomeroy* v. *Bell* (1897) 118 Cal. 635, 636, 638 [50 P. 683]; *Conde* v. *Sweeney* (1911) 16 Cal.App. 157, 160 [116 P. 319].) Articles affixed to the seller's land by a purchaser who has not yet obtained title "cannot ordinarily be removed by him without the consent of the vendor, the presumption being, from his interest under the contract and expectation of acquiring absolute title, that he intended the structures or articles to be a part of the land." (*Teater* v. *Good Hope Dev. Corp.* (1939) 14 Cal.2d 196, 207 [93 P.2d 112].) In this case the deed to the real estate in question was placed in escrow; and since the escrow never closed, the deed was never delivered to the Matlocks. (See *Sousa* v. *First California Co.* (1950) 101 Cal.App.2d 533, 538-543 [225 P.2d 955], hg. den. (1951).) The Hastings at all times retained title to the real estate and the house. They therefore acquired title to the improvements. The settlement agreement did not contemplate a *transfer* of title to the improvements, but rather *payment* of their costs. ■ A parol promise to pay for improvements made on land is not within the statute of frauds. (*Godeffroy* v. *Caldwell* (1852) 2 Cal. 489, 493; *Houston* v. *Sledge* (1888) 101 N.C. 640 [8

---

[4]Civil Code section 1013 provides: "When a person affixes his property to the land of another, without an agreement permitting him to remove it, the thing affixed, except as otherwise provided in this chapter, belongs to the owner of the land, unless he chooses to require the former to remove it or the former elects to exercise the right of removal provided for in Section 1013.5 of this chapter." The record does not disclose that the Matlocks made any attempt to enforce any right of removal they may have had under Civil Code section 1013.5.

S.E. 145, 147]; and see *Becker* v. *Lagerquist Brothers, Inc.* (1960) 55 Wash.2d 425 [348 P.2d 423, 430].)

It is true that the Matlocks, as purchasers under the contract of sale, held an equitable title by virtue of the doctrine of equitable conversion. (*Estate of Reid* (1938) 26 Cal.App.2d 362, 367-369 [79 P.2d 451].) But a transfer of that equitable title from the Matlocks to the Hastings did not require a writing. ·The rescission of a written contract for the purchase and sale of an interest in real property may be accomplished by an oral agreement. (*Post* v. *Palpar* (1960) 184 Cal.App.2d 676, 679 [7 Cal.Rptr. 823]; *Bush* v. *Vernon* (1955) 135 Cal.App.2d 33, 37 [286 P.2d 903]; *San Roque Properties, Inc.* v. *Pierce* (1937) 18 Cal.App.2d 379, 380 [63 P.2d 1198]; *Tompkins* v. *Davidow* (1915) 27 Cal.App. 327, 334-335 [149 P. 788].)

■ We have found no California case applying the statute of frauds to an oral out-of-court settlement agreement involving the transfer of interests in real property.[5] But the policy of the law favoring settlements is well established; settlements are " ' "highly favored" ' " because they diminish " ' "the expense and persistency of litigation." ' " (*Fisher* v. *Superior Court* (1980) 103 Cal.App.3d 434, 441 [163 Cal.Rptr. 47]; *Stambaugh* v. *Superior Court* (1976) 62 Cal.App.3d 231, 236 [132 Cal.Rptr. 843].)

For the foregoing reasons we hold that where, as here, an oral out-of-court settlement agreement purports to effect a rescission of a written contract for the purchase and sale of real property, the settlement agreement is not within the statute of frauds and need not be in writing.

## C. *Terms of the Settlement Agreement*

■ The Matlocks further contend that the settlement agreement cannot be specifically enforced because it is fatally uncertain in material terms. Specifically, they complain that the agreement contains no provision governing the time and method of the Hastings' payment. This argument is specious.

Substantial evidence was adduced to the effect that it was agreed that the Hastings would have 45 days from May 26, 1978 within which to tender

---

[5]*Gorman* v. *Holte* (1985) 164 Cal.App.3d 984 [211 Cal.Rptr. 34] involved an oral settlement the terms of which were stipulated on the record in open court. *Corkland* v. *Boscoe* (1984) 156 Cal.App.3d 989 [203 Cal.Rptr. 356] involved a written settlement agreement filed with the court. In *Gopal* v. *Yoshikawa* (1983) 147 Cal.App.3d 128 [195 Cal.Rptr. 36] the parties stipulated to the terms of a settlement at a mandatory settlement conference. In *Duran* v. *Duran* (1983) 150 Cal.App.3d 176 [197 Cal.Rptr. 497], where the parties allegedly agreed to a settlement over the telephone, the statute of frauds was not discussed.

payment to the Matlocks. Mr. Steinbock, Mrs. Hastings, and Mr. Hastings so testified. The credibility of those witnesses was a matter for the trial court to determine. ■ The testimony of one witness, if believed, is sufficient for the proof of any fact. (Evid. Code, § 411.)

■ Even if there had been no testimony concerning the time allotted for the Hastings' performance, the law nevertheless would imply a reasonable time, and "this implied time element does not render the contract uncertain or unenforceable." (*San Francisco Hotel Co.* v. *Baior* (1961) 189 Cal.App.2d 206, 213 [11 Cal.Rptr. 32]; *Greenstone* v. *Claretian Theo. Seminary* (1959) 173 Cal.App.2d 21, 32 [343 P.2d 161]; Civ. Code § 1657.) Since the 45-day period was to be contemporaneous with the period during which the Matlocks were to occupy the house rent free, we cannot say that the time provided for the Hastings' payment was unreasonable.

As to the method of payment there was no dispute. Mr. Crawford, Mrs. Matlock, and Mr. Matlock, along with all other witnesses, concurred that payment from the Hastings was to be made by check. No other method of payment was suggested in the course of the trial.

The Matlocks also contend that the trial court inserted into the terms of the settlement agreement a provision whereby all parties agreed to waive the terms of Civil Code section 1542. We have examined the judgment in detail (*ante,* pp. 833-834), and we are unable to find any such provision.

D. *Readiness and Willingness to Perform*

■ ■ The Matlocks next complain that the Hastings "failed to establish that they were willing and able, as of May 26, 1978, to perform the alleged [settlement] agreement." In particular, they contend that the financial statements offered in evidence by the Hastings were not properly authenticated.

In the course of the trial Mrs. Hastings testified that as of May 26, 1978 she and her husband had a line of credit with a bank for $80,000, and had the balance of the proposed $142,842.86 payment deposited in checking and savings accounts. She identified three financial statements which had been prepared by an accountant, dated November 30, 1977, March 1, 1978, and August 25, 1978. She further testified that the statements had been prepared "in the ordinary course of business" for herself and her husband, because "[t]he bank required them," and because they were used in connection with her husband's business activities. Counsel for the Matlocks initially objected to the admission of the statements on the ground that they contained hearsay; but the court determined otherwise, and admitted the statements in evidence.

The evidence concerning the financial statements was uncontradicted, and the Matlocks' counsel raised no further objection to their admission.

Mrs. Hastings' testimony established that the statements had been prepared in the ordinary course of business, and the dates and mode or preparation were apparent to the court from the faces of the documents themselves. The requirements of Evidence Code section 1271 were thus met. "Where, as in the case before us, the determination of the trial court that the foundation laid was sufficient is a deduction reasonably drawn from the evidence, such conclusion is binding upon an appellate court." (*People* v. *Fowzer* (1954) 127 Cal.App.2d 742, 747 [274 Cal.Rptr. 471], accord, *People* v. *Williams* (1973) 36 Cal.App.3d 262, 275 [111 Cal.Rptr. 378], and *Levy-Zentner Co.* v. *Southern Pac. Transportation Co.* (1977) 74 Cal.App.3d 762, 784-785 [142 Cal.Rptr. 1].)

### E. *Alleged Extreme Hardship*

■ The Matlocks next contend that they will suffer extreme hardship if the settlement agreement is enforced, because the value of the property in question has risen to $500,000. There is no evidence in the record as to the present value of the property; but since counsel for the Hastings has not disputed the $500,000 figure in his brief, we accept it for the sake of discussion.

Though the record is completely silent on the point, at oral argument counsel for the Matlocks represented that subsequent to the date of the alleged settlement (May 26, 1978), the Matlocks lived in the house for a period of time and then moved; the house "has been vacant since." Counsel for the Hastings responded that the Matlocks lived in the house "between two and three years" after the date of the alleged settlement. Nothing in the record suggests that the Matlocks ever paid any rent during whatever period they inhabited the house, or thereafter. Furthermore, there is nothing in the record which suggests that the Matlocks ever surrendered possession of the premises to the Hastings. It therefore appears that the Hastings have derived no income from the property for a period of more than seven years. Unquestionably this was a hardship to them.

"Section 3391 of the Civil Code provides, in part, that specific performance cannot be enforced against a party to a contract . . . if it is not, as to him, just and reasonable. A challenge based upon these principles must be considered in view of the entire circumstances [citation], including the object to be obtained by the contract and the relationship of the parties *and must be determined as of the time the contract was made.*" (*Berkeley Lawn Bowling Club* v. *City of Berkeley* (1974) 42 Cal.App.3d 280, 290 [116

Cal.Rptr. 762], hg. den. (1974); italics added.) A subsequent increase in the value of real property, between the date of the agreement and the date of trial, "is immaterial as respects specific performance." (*Schwartz* v. *Shapiro* (1964) 229 Cal.App.2d 238, 255 [40 Cal.Rptr. 189].) In the light of these principles we find the Matlocks' claim of extreme hardship to be without merit.

## F. *Attorney's Fees*

As noted earlier, both the purchase-sale contract and the rental agreement contained clauses relating to attorneys' fees. Enforcement of the settlement agreement would necessarily entail a rescission of the two earlier agreements. The trial court, in enforcing the settlement, awarded attorney's fees to the Hastings as the prevailing parties. The Matlocks now claim that the award was improper, because no mention of attorneys' fees was made in the course of the negotiations leading to the alleged settlement.

The record reveals evidence contrary to the position of the Matlocks. Mr. Steinbock (attorney for the Hastings) was asked why he put an attorney's fees clause in the *written* settlement agreement that the Matlocks never signed. His response was: "Because what we were settling was a settlement of an unlawful detainer action regarding a pre-rental or prerecordation rental which had an attorney fee provision in it, and a lawsuit regarding a sale of a house that was being rescinded, which was in a—the form of a contract to sell—purchase and sell which also had an attorney fee provision in it." Mr. Steinbock further testified that when he directed the clause to be inserted in the written draft, Mr. Crawford (attorney for the Matlocks) was present. There is, therefore, evidence indicating that the question of attorney's fees was mentioned in the course of the settlement negotiations.

The Matlocks nevertheless question the propriety of the award. The question, as we see it, boils down to this: Under Civil Code section 1717, is it permissible to award attorney's fees to the prevailing party in an action seeking to enforce the rescission of a written land sale contract containing a provision for such fees?

Unhappily no California opinion has addressed the question squarely. In *Leaf* v. *Phil Rauch, Inc.* (1975) 47 Cal.App.3d 371, 377-379 [120 Cal.Rptr. 749], a case in which the plaintiffs sued for restitution based upon rescission of a motor vehicle conditional sale contract, it was held that "although a contract is extinguished by its rescission [citations], and the instant action sought restitution based on plaintiffs' prior rescission of the motor vehicle conditional sale contract, the action nevertheless 'involved' that contract, [fn. omitted] which was subject to the provisions of the Automobile Sales

Finance Act [Civ. Code, § 2981, et seq.]. Therefore plaintiffs, the prevailing parties as against defendant Phil Rauch, Inc., were entitled to attorneys' fees." (*Id.*, at pp. 378-379.) In footnote 3 of *Coast Bank* v. *Holmes* (1971) 19 Cal.App.3d 581, 597 [97 Cal.Rptr. 30], it was held: "Civil Code section 1717, is part of an overall legislative policy designed to enable consumers and others who may be in a disadvantageous contractual bargaining position to protect their rights through the judicial process by permitting recovery of attorney's fees incurred in litigation in the event they prevail. [See, e.g. Civ. Code, § 1811.1 (Installment Sales Contracts); Civ. Code, § 2983.4 (Conditional Sales Contracts); Civ. Code, § 1794.1 (Sale Warranties of Consumer Goods); Civ. Code 1812.94 (Health Studio Contracts); Civ. Code, § 1732 (Swimming Pool Construction Contracts).]" In *Care Constr., Inc.* v. *Century Convalescent Centers, Inc.* (1976) 54 Cal.App.3d 701, 706 [126 Cal.Rptr. 761], where the defendant prevailed against the plaintiffs' claim of breach of a lease and was awarded attorney's fees on appeal, it was held that "the 'on a contract' language of Civil Code, sections 1811.1 and 2983.4, appears to have the same meaning when found in [Civil Code] section 1717. As we noted in *Coast Bank* v. *Holmes, supra,* 19 Cal.App.3d 581, 597, footnote 3, these sections are all part of an overall legislative policy to provide for recovery of attorney's fees for the prevailing party. Thus, as long as the action here involved a contract it was 'on a contract' and within Civil Code, section 1717." In *Star Pacific Investments, Inc.* v. *Oro Hills Ranch, Inc.* (1981) 121 Cal.App.3d 447 [176 Cal.Rptr. 546], where the plaintiff successfully sued to rescind (among other things) a deed of trust, it was held: "Here, since the language of the deed of trust did not limit the situation in which attorney fees would be recoverable to any particular form of action involving the contract, the suit resulting in a judgment invalidating the purported agreement between the parties for lack of consideration and alternatively for intentional misrepresentation was an action 'on the contract' which permitted an award of attorney fees under section 1717." (*Id.*, at p. 463.)

 These decisions lead us to this conclusion: In an action to enforce the rescission of a written land sale agreement, containing a clause for attorney's fees which does not limit recovery of such fees to any particular form of action involving the contract, the prevailing party is entitled to an award of such fees. Since the Hastings prevailed in their suit seeking specific performance of a settlement agreement which effectively rescinded two earlier agreements, they were properly awarded attorney's fees.[6]

---

[6]We acknowledge that Civil Code section 1717 was amended in 1981 to add a new paragraph (b) and subdivision (2) thereof, which provides: "Where an action has been . . . dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section." But in this case the "settlement" is achieved by a trial court judgment awarding specific performance, and an appellate court decision upholding the judgment. We

Furthermore, we note that the clause in the rental agreement provides that the Hastings are entitled to attorney's fees in the event they sue to "recover possession of the premises." In one sense their action seeking specific performance of the settlement agreement was an action to recover possession of the premises. Therefore, by the terms of the rental agreement itself, the Hastings are entitled to attorney fees.

Such fees are also allowable to the prevailing parties on appeal. (*Smith* v. *Brovan* (1979) 97 Cal.App.3d 19, 25 [158 Cal.Rptr. 515].) "[T]he determination of the amount rests most appropriately with the trial court on a showing of nature of the services and the time involved." (*Vitek, Inc.* v. *Alvarado Ice Palace, Inc.* (1973) 34 Cal.App.3d 586, 595 [110 Cal.Rptr. 86].)

### III. DISPOSITION

The judgment is affirmed. The cause is remanded to the trial court for a hearing to determine the amount of the Hastings' attorney's fees.

Panelli, P. J., and Agliano, J., concurred.

Appellants' petition for review by the Supreme Court was denied November 13, 1985.

---

do not believe that the drafters of the 1981 amendment had in mind the sort of settlement involved in this case.